(C. D. 1722)

Page N. Goffigon v. United States

United States Customs Court, First Division

(Decided July 28, 1955)

*John F. Kavanagh* for the plaintiff.

*Warren E. Burger,* Assistant Attorney General (*William J. Vitale,* trial attorney), for the defendant.

Before Oliver, Mollison, and Lawrence, Judges; Oliver, C. J., dissenting

Mollison, Judge: This protest relates to a shipload of a material imported into the United States from the Greek island of Santorin. The merchandise is described on the invoice as "Crushed Pumice Stone Aggregate Sand and Gravel," and the collector took duty at the rate of 1/20 cent per pound under the provision in paragraph 206 of the Tariff Act of 1930, as modified by the Presidential proclamations carrying out the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T. D.'s 52373 and 52476, for pumice stone, unmanufactured, valued at $15 or less per ton.

It is the plaintiff's contention that the term "pumice stone," as used in paragraph 206, is limited to pumice stone which is suitable for use for abrasive purposes. In connection with this contention, plaintiff has offered testimony which establishes that merchandise such as that at bar is chiefly used as an aggregate, i. e., a hard, inert material used for mixing with cement material to form lightweight concrete, and, moreover, that such imported merchandise, because of impurities contained therein, is not suitable or actually used for abrasive purposes.

The claim chiefly relied upon by the plaintiff is for free entry under the provision in paragraph 1708 of the Tariff Act of 1930 for lava, unmanufactured, but claims for free entry under the provision in paragraph 1719 for crude minerals, not specially provided for, and

under the provision in paragraph 1775 for stone and sand, not specially provided for, were also pressed. A motion to amend the protest to include a claim under the foregoing provisions, by virtue of the similitude clause in paragraph 1559, was denied by this division (Tr. p. 187) on the ground that the similitude clause, by its very terms, is applicable only to articles similar to other articles which are enumerated in the tariff act *and are chargeable with duty* and, consequently, is not applicable to claims in connection with articles enumerated in the free list. Cf. *United States* v. *Carnegie*, 8 Ct. Cust. Appls. 377, T. D. 37631.

An amendment to include an alternative claim for duty at the rate of 10 per centum ad valorem under the provision for nonenumerated unmanufactured articles in paragraph 1558 was allowed.

It will readily be seen that all of the provisions under which claim is made are more general in character than the relatively specific provision "pumice stone," under which the merchandise was classified and assessed with duty. As the issue is presented, therefore, the basic question is whether the imported merchandise is embraced within the provision for "pumice stone."

There does not seem to be any real question but that the merchandise is unmanufactured, although, in the brief filed on behalf of the defendant, it is pointed out that inasmuch as the merchandise at bar was crushed to specifications of lumps of five-eighths of an inch or less "this product would seem to be manufactured" and is not "in the condition as it comes from the earth." We do not understand the defendant to claim, however, that a higher classification than "unmanufactured" should be applied to the instant merchandise as pumice stone, or that the collector's classification is to that extent abandoned by the defendant. There is ample evidence to show that the specification of five-eighths of an inch and downward was chiefly for facility and economy in transportation, so as to fill up the holds of the ship and avoid the interstices that would have resulted had larger pieces been shipped. It is well settled that such crushing operations, even though they may be incidentally of benefit in the ultimate use of the merchandise, do not take the merchandise out of the class of "unmanufactured." *Lackawanna Steel Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 93, T. D. 38359. See also *Charles B. Chrystal Co., Inc.* v. *United States*, 4 Cust. Ct. 78, C. D. 291, with respect to pumice stone, dried, screened, assorted into various sizes, and packed into bags, held to be pumice stone, unmanufactured.

Neither is there any real question but that the merchandise was volcanic in origin and is a form of lava. Consequently, if the merchandise were not properly within the provision for "pumice stone," it would take classification under the free list provision for "lava,

unmanufactured," that provision being clearly the most specific provision applicable to such merchandise of those under which claim is made.

So far as we have been able to determine, the term "pumice stone," as it is found in paragraph 206, *supra*, or as used in preceding tariff acts, has never been judicially defined. Neither side raises any question of long-continued administrative practice in the application of the term to merchandise such as that at bar. Consequently, in seeking to determine the meaning to be applied to the term, we are limited to a consideration of it as found in the statute, unless it appears that there is a patent or latent ambiguity therein which would justify resort to the legislative history of the provision.

As found in paragraph 206, *supra*, the word appears to be a name designation, or what is generally known in law as an *eo nomine* designation, one by "that name." Ordinarily, such a designation would embrace any object or thing which commonly or commercially in this country would be understood or known by that name, in this case, the name "pumice stone."

Neither party to this case has raised the issue of commercial designation, that is to say, claimed that the commercial meaning of the term "pumice stone" differed from the common meaning thereof, and that under a uniform, definite, and general meaning in the trade and commerce of the United States dealing in such material the imported merchandise was included or excluded from such commercial meaning. It is, therefore, presumed that the common and commercial meanings of the term "pumice stone" are the same.

In and of itself the name "pumice stone" does not suggest or connote use of the material intended to be designated by that name, as, for example, would the terms "pumice stone used for abrasive purposes" or "abrasive pumice stone." It is, therefore, not a designation by or suggesting use, and, if it is to be interpreted as being limited to merchandise having a specific use and excluding merchandise having other uses, this must appear from the common understanding of what is embraced by the term "pumice stone."

In resorting to extrinsic aids to determine the common meaning of the term "pumice stone," we find that almost invariably the definitions of lexicographers and other authoritative sources include not only a description of the nature, characteristics, and origin of pumice stone, but as well a reference to its use. Thus, Webster's New International Dictionary, 1930 edition, defines "pumice" as—

A highly vesicular volcanic glass, produced by the extravasation of water vapor at a high temperature as lava comes to the surface; hardened volcanic glass froth. Its color is white, gray, yellowish, or brownish, rarely red. It is much used, esp. in the form of powder, for smoothing and polishing. Called also **pumice stone.**

The second edition, 1948, of the same work has a similar definition, as follows:

A kind of volcanic glass that is so full of minute cavities that it is very light; hardened volcanic glass froth. The cavities are produced by the expulsion of water vapor at a high temperature as lava comes to the surface. Its color is white, gray, yellowish, or brownish, rarely red. It is much used, esp. in the form of powder, for smoothing and polishing. Called also **pumice stone.**

Funk & Wagnalls New Standard Dictionary, editions of 1939 and 1942, defines "pumice" (noting that it is also called "pumice-stone") as follows:

Volcanic scoria or lava, spongy or cellular from bubbles of steam or gas which it contained during liquidity; much used as a polishing-material, especially when powdered.

The Summary of Tariff Information, 1929, compiled by the United States Tariff Commission and printed for the use of the Committee on Ways and Means of the House of Representatives when the bill which later became the Tariff Act of 1930 was under consideration by the Congress, contains the following under the heading "PUMICE STONE AND PUMICITE" and the subheading "Description and uses":

Pumice stone is a volcanic lava having a honeycomb structure. The marketable grades are:

(a) Crude pumice as extracted from the mines, but excluding separately marketable lumps, and varying in size from chips to coarse sand.

(b) Lump pumice, varying in size from about 1½ to 6 inches across, not conforming to any predetermined shape.

(c) Lump pumice, trimmed or cut to shapes.

(d) Powdered pumice.

A commodity allied to powdered pumice is pumicite, a volcanic ash, weathered and contaminated by wind-blown sand and soil.

Practically the entire supply of pumice and pumicite is used as an abrasive, either in solid form for polishing wood and metals or combined with liquids or fats to make cleaning and scouring soaps and pastes.

Were we to confine ourselves to that part of the common meaning of the term "pumice stone," as expressed in the above definitions, which deals with the description of the origin and physical characteristics of pumice stone, it seems clear that the merchandise at bar would undoubtedly be embraced within such description. However, to do so would be to ignore an important part of the meaning of the term, namely, that which relates to its use. In fact, use is so tied to the meaning of the term that the noun "pumice" has been verbified and has the meaning "To clean, smooth, etc., with pumice" (Webster, *op. cit.*).

In contradistinction, the said Summary of Tariff Information, under the heading of "LAVA, UNMANUFACTURED" (Schedule 15, p. 2404),

states "The largest use of such rocks is for crushed stone," which is the use of the merchandise at bar.

We are of the opinion that the meaning of "pumice stone" in common speech and the material intended to be covered by that designation in paragraph 206, *supra*, relates to that type of lava having the physical characteristics referred to in the definitions cited above and which is suitable for use as an abrasive.

From such a meaning, the merchandise at bar is excluded, it having been established that it is not suitable for use as an abrasive. As has been indicated, the next most specific designation for the merchandise is "Lava, unmanufactured" in paragraph 1708, and the protest claim for free entry under that provision is, therefore, sustained, and judgment will issue accordingly.

## DISSENTING OPINION

Oliver, Chief Judge: I respectfully dissent from the conclusion reached by my colleagues in this case.

The majority opinion construes the provision for "pumice stone" in paragraph 206 of the Tariff Act of 1930, as amended by T. D. 52373 and T. D. 52476, as an *eo nomine* designation suggestive of use and that that use is for abrasive purposes. In so interpreting that tariff provision, reliance has been placed on certain dictionary definitions of the word "pumice" (also called "pumice stone"), the controlling effect thereof being applied to the element of the definitions suggesting a chief use of the commodity for smoothing and polishing. The majority opinion also refers to the Summary of Tariff Information, 1929, to support the interpretation placed upon the quoted dictionary definitions.

In our consideration of the present issue, we must look further. The merchandise in question was imported in 1953. It is, therefore, pertinent to go beyond the references cited in the majority opinion and turn to the Summary of Tariff Information of 1948, a publication prepared "in response to a resolution of the Ways and Means Committee of the House of Representatives, adopted July 25, 1947, which directs the Commission to 'rewrite or otherwise bring up to date * * * the commodity summaries of tariff information.' " In the Summary of Tariff Information, 1948, there appears the following comment under the general heading, "PUMICE STONE":

Pumice is a natural siliceous abrasive material occurring throughout the far western States. The principal foreign deposits are on Lipari Island off the northern coast of Sicily and on Santorin Island in the Greek archipelago.

Pumice in lump and ground form is used chiefly as an abrasive in the metal-polishing and wood-finishing industries. *Increasing amounts are being used as an aggregate in lightweight concrete work.* [Italics supplied.]

The information contained in the foregoing quotation, which specifically refers to the source (i. e., the Greek island of Santorin) as well as the use (i. e., as an aggregate in lightweight concrete work) of the present merchandise, lends support to the classification invoked by the collector.

It is my opinion that the provision for "pumice stone" in paragraph 206, as amended, *supra*, includes the merchandise in question. The protest should be overruled and the action of the collector affirmed.